# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| |
|---|
| **HECTOR SANDOVAL**, |
| Plaintiff, |
| v. |
| **U.S. DEPARTMENT OF JUSTICE *et al.***, |
| Defendants. |

Case No. 17-cv-567 (CRC)

## MEMORANDUM OPINION

Federal Inmate Hector Sandoval filed Freedom of Information Act requests with several law enforcement agencies seeking documents he believes would assist in proving his innocence. After the agencies processed the requests, Sandoval filed suit. He claims that the agencies failed to produce all the records he sought and to correct allegedly inaccurate records in their possession. The agencies have now moved for dismissal or, in the alternative, for summary judgment. The Court will grant summary judgment for the agencies.

### I. Factual Background

In 2002, Mr. Sandoval was convicted by a jury of kidnapping and carrying a firearm during and in relation to a violent crime. See Sandoval v. United States, 2007 WL 2937124, at *1 (C.D. Ill. Sept. 26, 2007), aff'd, 574 F.3d 847 (7th Cir. 2007). On February 28, 2016, he submitted a request under the Freedom of Information Act ("FOIA") to three agencies—the Federal Bureau of Investigation ("FBI"), the Bureau of Prisons ("BOP"), and the U.S. Attorney's Office for the Central District of Illinois ("U.S. Attorney's Office")—seeking records and documents related to his criminal investigation and prosecution. See Compl. ¶¶ 12-14. Sandoval believed these documents would prove his innocence in his criminal case. Id. Sandoval also

submitted a Privacy Act request to the same agencies, requesting that any records the agencies maintained be corrected to reflect Sandoval's alleged innocence of his convicted conduct. Defendants' Motion to Dismiss ("Defs.' MTD") at 20.

The FBI responded to Sandoval's requests in April 2016, notifying him that its search of the Central Records System had not uncovered any responsive records. Defs.' MTD, Declaration of David M. Hardy ("Hardy Decl."), at 16-17. The BOP, meanwhile, informed Sandoval in September 2016 that its search yielded only Sandoval's presentence report, which Sandoval could review under supervision at the correctional center. Id., Declaration of Ronald L. Rodgers ("Rodgers Decl."), at 9. And for its part, the U.S. Attorney's Office advised Sandoval in June 2016 that its search had come up empty. Defs.' MTD, Declaration of Princina Stone ("Stone Decl.") at 18. Sandoval did not administratively appeal the FBI and BOP responses. See Hardy Decl. at 5; Rodgers Decl. at 13. He did, however, appeal the U.S. Attorney's Office's response, which was affirmed. See Stone Decl. at 24.

In March 2017, Sandoval, proceeding *pro se*, filed suit against the three agencies in relation to his request. He also named as defendants the Department of Justice and the Executive Office of the United States Attorneys ("EOUSA"), the DOJ liaison office to the various United States Attorney's offices nationwide. His complaint alleges that the agencies failed to produce responsive records under FOIA and the Privacy Act and failed to correct the records as the Privacy Act requires. Sandoval also sought damages related to the agencies' alleged misconduct in maintaining inaccurate records and "framing Sandoval for the crimes he never committed." Compl. at 27. After the complaint was filed, the U.S. Attorney's Office modified its search and provided Sandoval with 101 responsive pages in August 2017, one page more than the maximum Sandoval could receive without incurring additional fees, which he declined to do. Stone Decl.

at 4-5. The government thereafter filed a motion for dismissal or, alternatively, summary judgment. Sandoval filed an opposition, and the motion is now ripe for resolution.

**II. Legal Standard**

A. Motion to Dismiss

In evaluating a motion to dismiss under either Rule 12(b)(1) or 12(b)(6), a court must "treat a complaint's factual allegations as true . . . and must grant a plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal citations omitted), quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979); see also Am. Nat'l Ins. Co. v. FDIC, 642 F.3d 1137, 1139 (D.C. Cir. 2011). Nevertheless, a court need not accept inferences drawn by the plaintiff that are unsupported by facts alleged in the complaint, nor must the court accept a plaintiff's legal conclusions. Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002). When reviewing a challenge pursuant to Rule 12(b)(1), the court may consider documents outside the pleadings to assure itself that it has jurisdiction. See Land v. Dollar, 330 U.S. 731, 735 n. 4 (1947); Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir. 1987). In contrast, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint and matters about which the Court may take judicial notice." Gustave–Schmidt v. Chao, 226 F. Supp. 2d 191, 196 (D.D.C. 2002).

B. Motion for Summary Judgment

In a FOIA case, a district court reviews the agency's decisions *de novo* and "the burden is on the agency to sustain its action." 5 U.S.C. § 552(a)(4)(B); Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981). "[T]he vast majority of FOIA cases can be resolved on summary judgment." Brayton v. Office of U.S. Trade Rep., 641 F.3d 521, 527 (D.C. Cir. 2011).

3

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

In FOIA cases, "[s]ummary judgment may be granted on the basis of agency affidavits" when those affidavits "contain reasonable specificity of detail rather than merely conclusory statements" and when "they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." Judicial Watch, Inc. v. U.S. Secret Serv., 726 F.3d 208, 215 (D.C. Cir. 2013), quoting Consumer Fed'n of Am. v. Dep't of Agric., 455 F.3d 283, 287 (D.C. Cir. 2006). However, a plaintiff cannot rebut the good-faith presumption afforded to an agency's supporting affidavits through "purely speculative claims about the existence and discoverability of other documents." SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991), quoting Ground Saucer Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C. Cir. 1981). Similarly, in a Privacy Act case, the court may rely on agency affidavits or declarations to enter summary judgment. See Chambers v. U.S. Dep't of the Interior, 568 F.3d 998, 1003 (D.C. Cir. 2009).

### III. Analysis

#### A. Plaintiff's FOIA and Privacy Act Claims against the FBI and BOP

Prior to filing suit, a FOIA requester must exhaust administrative remedies. Hidalgo v. FBI, 344 F.3d 1256, 1258 (D.C. Cir. 2003). An agency has twenty days to determine if it will comply with the request, and it must notify the requestor of this decision. 5 U.S.C. § 552(a)(6)(A)(i). The agency's response should include its "determination of whether or not to comply with the request[,] the reasons for its decision[,]" and if the decision is adverse, notice of the requestor's right "to appeal to the head of the agency." Oglesby v. U.S. Dep't of the Army, 920 F.2d 57, 65 (D.C. Cir. 1990). Once the agency responds, "the FOIA requestor must appeal to the head of the agency" before bringing suit. Id. The agency must then make a determination

on the appeal within twenty days. § 552(a)(6)(A)(ii). However, if an agency fails to respond within twenty days, a requestor "shall be deemed to have exhausted his administrative remedies with respect to [a] request" and may file suit. § 552(a)(6)(C)(i). A plaintiff raising Privacy Act claims must also exhaust his administrative remedies prior to bringing suit. § 552a(g)(1)(A); Dick v. Holder, 67 F. Supp. 3d 167, 188 (D.D.C. 2014).

Sworn affidavits submitted by the government establish that Sandoval did not exhaust his administrative remedies before the FBI and BOP. Both agencies initially responded in a timely manner to Sandoval's requests. Hardy Decl. at 16-17; Rodgers Decl. at 9. Importantly, both informed Sandoval of his administrative appeal rights. See Hardy Decl. at 3-4; Rodgers Decl. at 6-7. According to the sworn agency affidavits, Sandoval never filed an appeal of his requests. See Hardy Decl. at 5; Rodgers Decl. at 13. And Sandoval points to no allegations or evidence to contradict these assertions. The Court thus concludes that Sandoval has failed to exhaust his administrative remedies and will dismiss the FOIA and Privacy Act claims against the FBI and BOP on that basis.

B. Plaintiff's FOIA and Privacy Act claims against the U.S. Attorney's Office

The government has submitted an affidavit from Princina Stone, an Attorney Advisor with EOUSA, which advises U.S. Attorney's Offices in responding to FOIA and Privacy Act requests. Stone avers that upon receiving Sandoval's request, the U.S. Attorney's Office conducted a search for all records in its possession responsive to the request and "determined it did not possess any records that proved 'the actual innocence of the kidnapping and firearm [charges].'" Stone Decl. at 4.

The U.S. Attorney's Office, after reviewing Sandoval's complaint in this case, then decided to expand the scope of its prior search and performed an additional one. Id. at 4-5. This

5

second search returned more results, and the Office provided Sandoval with a production of over 100 pages of records. Id. at 5. Since Sandoval had been provided the 100 free pages he was entitled to under FOIA, the Office inquired whether Sandoval wanted them to continue responding to his request—which would require he pay fees—or stop its search after producing the 100 documents. Id. at 12-13. Sandoval requested the agency stop after 100 pages. Id. at 16.

The government contends this search is adequate, and the Court agrees. Sandoval has not argued that the documents produced to him by the Office are unresponsive, or that the Office's search could have been better tailored to find the most responsive documents; rather, he simply argues the Office should have produced more documents. But Sandoval indicated he wanted only the 100 free pages to which he was entitled under FOIA and did not wish the Office to search further. The Office's search was able to uncover 100 responsive pages, which is all that Sandoval was entitled to under the statute and DOJ regulations. 28 C.F.R. § 16.10(d)(4)(i)-(ii); see Pinson v. U.S. Dep't of Justice, 189 F. Supp. 3d 137, 150 (D.D.C. 2016) (discussing § 16.10(d)(4)(i)-(ii)). That fact is fatal to Sandoval's unlawful-witholding argument under both FOIA and the Privacy Act. And as for Sandoval's additional Privacy Act demand that the Office correct purportedly inaccurate records, Sandoval's unsupported assertions that the case against him was a sham do not warrant such relief. See, e.g., Compl. ¶¶ 34-36 (asserting that government witnesses lied). The Court therefore dismisses Sandoval's FOIA and Privacy Act claims against the U.S. Attorney's Office.

**IV. Conclusion**

For the foregoing reasons, the Court will grant Defendants' motion for summary judgment. A separate Order shall accompany this memorandum opinion.

CHRISTOPHER R. COOPER
United States District Judge

Date: August 27, 2018